Counsel, you may proceed. Good morning. My name is Pierce Gore. I represent Appellant Natalia Bruton. I'd like to reserve two minutes for rebuttal. You may have placed the court. First, the District Court erred in granting summary judgment. Gerber's labels were deceptive because they contained illegal nutrient content claims that made Gerber's products appear superior to competitor products. Bruton testified that she purchased Gerber's products instead of less expensive, comparable Beechnut products because Gerber's label claims appealed to her as a mother. Counsel, you can help me with this. I thought that there was a difference in the labels of the various competitors. Is that wrong? There's a difference between Gerber's labels and Beechnut's labels. What about the other products? Well, the focus here, obviously, is on Gerber's labels, of course. Gerber's labels are the ones that contain the illegal nutrient content claims. I guess what I'm struggling with, we have, of course, the overall issue of what standard we adopt with respect to ascertainability and administrative feasibility. The District Court seemed to be very focused on the administrative feasibility aspect of this. As there were 69 products in varying packages, she didn't see how a member of the class could identify what he or she had purchased. How did you miss on that? Was that a miss or what's wrong? That was a miss. This case is different because baby food is different. Ms. Brewton testified that she remembered each and every one of the 15 products that her daughter, Tayla, was willing to eat. She had her packages. She produced them all, took photographs of them. Photographs of all 15 products were included in the complaint. Mothers remember which foods their babies eat and which foods they don't because the foods they don't eat, they spit out. Did she claim that she had read all the labels? She claimed that she read those labels. She at least looked at them at the time she made her purchase. She recalled exactly which 15 products she bought and when she bought them because these foods were designated for babies under the age of two. So she clearly remembered every Gerber product that she bought. She did not take photos of each and every package that she purchased. So Gerber argues that it can evade class certification simply by changing its labels. Let me ask you this, Dean. One of our panels recently heard a case called Briceño v. Conagra Foods where the ascertainability issue and administrative feasibility issue was addressed and they were deciding between the Third Circuit's strict approach or Seventh Circuit's more lenient approach. I gather you're in favor of the Seventh Circuit approach, right? We would be fine with Mullins. Okay. And in this case, do you believe that the appropriate thing for our court to do is to defer submitting this case or at least ruling on it until the Briceño case comes out? Well, I think this panel could go ahead and rule because in the Ninth Circuit historically, there is no heightened ascertainability standard. There is no administrative procedure in small-dollar consumer class actions by which millions of class members can be identified before they ever submit a claim. So this is the very issue that's in front of the Briceño panel. It is? It is. But we do have this policy of deferring to the first panel, which is a case submitted before. And we would be fine with that? We would. There is sufficient evidence of deception in this case, sufficient to overcome summary judgment, because a reasonable consumer would infer that if Peachnut could make the same claims as Gerber, it would. And given the fact that Gerber made the claims and Peachnut didn't, it was reasonable for Bruton to infer that Gerber's products met standards that Peachnut's products did not. Can I ask you this, counsel? Do you have to go struggle with this? I really do. Whichever standard gets adopted. I suppose the Mullins case helps you the most. But how do you? Let's assume that the class is certified and you move forward. How do you litigate this? I mean, your plaintiff is an extraordinary mother. I have six children. I know a little bit about children. And, oh, I've never been a mother. I know what prenatal baby food is, and I can't imagine a mother being so meticulous that she would, like, at every label on the baby food package. I mean, it's incredible to me. I'm not saying she didn't. I'm just saying it's incredible to me that she would pick Gerber or Peachnut. I get that. But I don't get the microscopic examination. But it seems like unless somebody actually did see that, it's hard to see where there's an offense because you're talking about mislabeled, misled. Well, if you don't read the label, how can you be misled? Well, in every small-dollar consumer class action, you're going to have consumers who don't keep receipts. You're going to have consumers who don't have their packages at the time the case is filed. You're going to have lots of consumers who don't photograph every package. The way it works, as Judge Fletcher noted at the September 12th hearing on Prisino, is people get the notice. It has to have an objective class definition, a specific product at a specific time period. Consumers read that notice and they think to themselves, I either bought this or I didn't. They either file a claim or they don't. There is simply no evidence in this case or in any small-dollar consumer class action that the court needs an administrative mechanism to identify those consumers before they file a claim. There is no evidence that Gerber's customers will lie under oath to recover a few dollars. No, I get that, and I agree with you. These are primarily to help the legal community, and the legal community does very well with it. But the reality is I just don't see how you can identify people with these kinds of products sufficiently to get a kind of an award. How do they do that? Did you just say, I shopped at this store and I think I bought some Gerber's? Is that what they say? In small-dollar consumer class actions, class members self-identify. That's how they're identified. And claims administrators have procedures for weeding out false claims. There's a tiny, tiny fraction of all claims submitted that turn out to be mistakes, duplicates, and claims administrators do that routinely. But there's no way and no need for the court to identify class members before claims are submitted. So in other words, as long as there is a feasible process, but the moral of the ball doesn't lie. You just sort it out later. That's essentially what we're talking about. That's right. Bruton presented, in addition to her own testimony, Gerber's labels, the applicable regulations, expert declarations, and FDA warning letters, including this one to Gerber, cited in our briefs. It's a label. It's an FDA warning letter from Gerber Carats. And the FDA said the product makes claims such as healthy, excellent source of vitamin A, no added sugar, which are not allowed on products intended for children under the age of two because appropriate dietary levels have not been established for children in this age range. The district court dismissed all of this evidence as anecdotal, but that's all there is. That's all you would ever be able to submit to overcome summary judgment. What else? Is there a consumer survey? No. The district court acknowledged that plaintiffs need not submit consumer surveys, and Judge Posner has already written about the value of consumer surveys prepared for litigation. So we gave the district. You have to have some sense of the consumer perception out there. And you're relying internally on your expert for that? No, we're relying on Ms. Bruton's extensive testimony at her deposition, which trusts. That's all self-testimony. She can't speak for the class. She can speak for herself, obviously, but how could she speak for the class? Because her testimony tracks the FDA warning letter. The FDA is the federal agency charged with enforcing the Federal Food, Drug, and Cosmetic Act, which California's Sherman law is a mirror image of. So when the plaintiff's testimony, a class rep who is found to be adequate and typical, tracks the federal regulation, which in turn is identical to the California regulation, that, together with the labels, the experts, the regulations, that is sufficient evidence of consumer deception. Bruton can also seek injunctive relief. At the time this case was before the district court, Gerber, at ER 322 through 323, said that it had discontinued the challenge labels on 11 of the 15 products included in Bruton's class definition. So clearly, as to the four products on which it was still making the unlawful claims, an injunctive relief would be appropriate, and an injunction would be appropriate as to the other 11 because Gerber's label changes were voluntary with no injunction in place. To this day, Gerber maintains that its labels are legal. There is nothing that would prevent Gerber from going back to making nutritional content claims on the labels of baby food. The district court also erred in dismissing Bruton's unjust enrichment claim. The district court held that it was duplicative of Ms. Bruton's UCL claim and would provide an identical remedy, but the remedy for UCL violation is restitution. The remedy for unjust enrichment can include non-restitutionary disgorgement, which is not available under the UCL. A UCL claim is tried to the court. An unjust enrichment claim is tried to a jury. The court, calculating restitution, could come up with a different number than a jury, calculating disgorgement. But Bruton is unlimited to either a UCL claim or an unjust enrichment claim. Business and professions code section 17205 makes UCL remedies cumulative to all other remedies. So Bruton's unjust enrichment claim isn't duplicative of a UCL claim. Unless the panel has questions, I'll reserve the remainder of my time. Thank you, Mr. Counsel. Thank you. We'll hear from the Gerber Products Company. Good morning. Good morning. May it please the court, Brian Berryman for Gerber Products Company. This court should affirm the district court's order granting Gerber's motion for summary judgment for the reasons stated in Judge Coe's order. May I say this, Counsel? We are looking at the cases of Verrado versus Antonioni and Hartford. The casualty insurance company versus J.R. Marketing. Is opposing counsel correct that Judge Coe was in error in dismissing the unjust enrichment portion of the claim? May I have the motion to dismiss the case? Sure. Your Honor, Judge Coe found that the remedies sought in the quasi-contract claim were duplicative of the other relief being sought in the complaint at that point. And I think this case is different than Astiata in that that case was at the pleading stage and Judge Hamilton dismissed the entire case. Here, most of the case and most of the costs of action went forward. Plaintiff had the opportunity to seek that same relief in the case and wasn't able to at the class certification stage and summary judgment stage. So the counsel is correct, though, that we're not talking about exactly the same dollars here, are we? Well, the relief you can seek under the remaining claims was the same depending on what theory the plaintiff put forward. The plaintiff put forward different theories at the class certification stage. We submitted ample law and evidence showing that none of those theories were adequate, and Judge Coe chose to deny class certification on a different ground. Do you agree that if going forward, if there's going forward, that if you have different damages on different parts of this, that the unjust enrichment claim should remain? If the case were remanded, and no, because the plaintiff had a chance to seek that same relief and wasn't able to, and that relief was available under the remaining claims. So there's been no prejudice to the plaintiff through Judge Coe's ruling. Well, she overruled the unjust enrichment. It's gone unless we overturn that. I guess my question would be, are you saying if we were to remand on other grounds, that there would be an opportunity for the plaintiffs to amend their complaint and replete unjust enrichment? Is that what you're saying? No, Your Honor. That's not appropriate in this case because the plaintiff had the opportunity to seek that relief under the different claims and was unable to. So from your perspective, that was just dead regardless of the two cases I mentioned? Yes, Your Honor. Okay. Counsel, on the class certification, do you agree with your opposing counsel that we should await the result of the Bracino bill? No, Your Honor. The facts in this case are completely different than Bracino, and there's no reason to wait. This Court can affirm Judge Coe's ruling denying the motion for class certification for both the reasons that Judge Coe denied class certification and on other grounds as well. The reasons that Judge Coe adopted and denied class certification, which Your Honor has mentioned some of them, apply not just to ascertainability, so the Court doesn't have to wait and see how the Bracino panel. But ascertainability is squarely raised in the Bracino case, is it not? Yes, Your Honor. And it was the ground that Judge Coe chose to deny class certification in this case, right? But why shouldn't we follow our own policy and defer to that panel, which has the same issue? Because, well, two reasons, Your Honor. Because one, here, the Court can deny, can affirm the ruling denying class certification on a number of other grounds that were raised in the lower court, and the facts in this case are very different than Bracino. For example, Your Honor's mentioned that here the plaintiffs tried to certify a class with 69 different types of baby food, the Gerber Second Foods products, during a period from May 2008 to the then present. Judge Coe correctly recognized that all of those products had had different labels on them during the proposed class period, that many of the labels during the proposed class period didn't contain any of the challenge statements, and some products even had seven different labels during the proposed class period. But, counsel, with respect, I'm reading what Judge Coe said. I mean, she was down the weeds in the sense of administrative feasibility, but that's all part of the ascertainability standard, is it not? Well, it is, Your Honor, but it also can be looked at with respect to predominance and administrative manageability, which is a 23 v. 3 standard. There are other ways to look at the same facts which exist in this case, and in Bracino, it was one label, one statement, all natural during the entire class period. So, from your perspective, the fact that we don't have clear law in our circuit on this particular issue is irrelevant because there are some parts of the ascertainability standard that would not have been dealt with by the Bracino panel that would permit us to affirm Judge Coe on different grounds. Is that your perspective? Yes, Your Honor, and that's what this court did in Burgerfield Depot. In that case, the district court judge had denied class certification based on ascertainability, and the court looked at the facts, which are more similar to this case. In that case, there were five different types of contracts and other differences during the class period, and the court looked at it as a predominance issue, and then in a footnote at the end of the opinion noted we don't need to reach the threshold issue of ascertainability because we find that individual issues predominate over class issues. So, the court didn't move forward with this case because there were a number of grounds on which the court presented to the district court which Judge Coe chose not to address. In addition to the differing labels, there was no evidence of class-wide method to calculate damages whatsoever and other grounds on which any basis for denying the class certification other than ascertainability from your perspective is sufficient for us to affirm Judge Coe's ruling on this issue. Yes, Your Honor, and there were a number of them that were put forward in the opposition that she chose not to address, and this court did the same thing in the Berger v. Home Depot case. Your Honor, I would like, if it's okay, to return to the summary judgment motion because I want to address some statements that counsel made in response to the court's questions. With respect to the summary judgment motion, under this court's decision in Clemens, the plaintiff had the burden to produce evidence showing that a significant portion of the consuming public of targeted consumers acting reasonably would have been misled, and as the Clemens court said, a few isolated examples are not enough. Here, the plaintiff produced no consumer survey or expert testimony, and that in and of itself is okay if you have something else, but here I note that the plaintiff's expert and Judge Coe noted this. Even the plaintiff's expert testified that the labels they'd issued here in the proposed class definition were accurate and not misleading in his deposition. Here, the plaintiff testified that even she didn't think the statements were untrue. There's ample testimony in the record that she said, I don't know. And she simply, what plaintiff hangs her hat on is one simple answer that was just repeated several times, and she simply made the conclusory statement at her deposition that she thought the Gerber products, her product was better than a comparable Beechnut product. That's not enough. In fact, a significant portion of the consuming public is likely to be deceived. That's a conclusory statement, and its evidence may be at most inadmissible of her individual decision, her reliance on her individual decision to buy a particular Gerber product instead of a Beechnut product. The only evidence in the record is quite different. The evidence in the record from Gerber's expert is that Beechnut made the same statements and they look at the Beechnut labels in the supplemental excerpts of record starting at page 239. They make the same statements. We also know they make the same statements because counsel mentioned the one letter that was sent to Gerber in February 2010 regarding certain products that were within the class definition. They made the same statements on the labels. You're saying that they were essentially identical. Yes. They made the same types of statements. And that's starting at supplemental excerpts of record 239. And we know the FDA sent a similar letter to Beechnut on the exact same day, February 22, 2010, about the same issues. So there's no dispute really that the only evidence in the record is they were both making the same statements. The Beechnut, the letter the FDA sent to Beechnut is in the record in supplemental excerpts of record 596 to 98. Gerber's letter is in the excerpts of record in 1555 and 1556. The only evidence in the record is also that the Beechnut products weren't available at most of the stores Plaintiff shopped at and that the Gerber products were, in fact, lower priced than the Beechnut products. That's all in the declaration of Carol Scott starting in the supplemental excerpts of record at page 450. So the Plaintiff has fallen far short of the Clemmons standard. She's given at most one bit of conclusory testimony about why she supposedly purchased a Gerber product over a Beechnut product, which, in fact, is proven unreliable and incorrect by the actual evidence in the record. I'll also note, with respect to the FDA letter that was mentioned, the letter to Gerber is interesting and different than most letters the FDA sends out because it doesn't say in the letter. This is the February 22, 2010 letter. Yes, Your Honor. That's the only letter sent to Gerber. It doesn't say that Gerber's statements on his labels are false or misleading. That's not in the letter anywhere. It simply says that we question whether certain statements made under labels comply with the FDCA. Well, they say there's misbranded within the meaning of section so-and-so because their labeling includes unauthorized nutrient content claims. Right, and what the FDA was saying is not that those statements, for example, that there's a certain amount of a vitamin in the product or the product is as healthy as fresh. They're not saying those statements are not true or that they're misleading. They're saying that the FDA thinks that those statements violate the FDCA, the Drug and Cosmetic Act. And the FDA, when it thinks something is false and misleading, it says it. If you look at the letters, for example, in the Brazil V. Dole case that the Court mentioned, it was sort of the same thing as the Prostino case. Those letters said that the conduct was false and misleading. That's not what the FDA is saying. And then Gerber sent a detailed response to that letter within 15 days, as it's required to do by the FDA regulations, and responses and supplemental excerpts of record 83 to 90 where it explained in detail why it thought it was complying with the regulations, and the FDA dropped the issue. And I just want to note also, this is in our brief, FDA letters are considered to be informal and advisory and are not binding on this Court. Well, let me stress that you're saying that when Gerber responded to the letter, the FDA dropped everything, right? That's right, Your Honor. Did they say, we're done with this in some way, or they just didn't say anything further? They didn't say, the FDA didn't say anything further, and that's typically the way it works with the FDA. And that procedure is explained in the Declaration of Cheryl Callan, which is in the record. So, in concluding, Your Honor, this Court can affirm the District Court's order granting summary judgment for the reasons stated in Judge Goh's order. There was insufficient evidence to, plaintiff didn't provide sufficient evidence to show the significant portion of the consumers acting reasonably would be misled. And this Court can affirm the District Court orders denying that certification under a number of the Rule 23 elements based on the evidence that Judge Goh, in fact, looked at and used to deny based on ascertainment. Usually the Judge Goh herself made her determination based upon reliance on things other than ascertainability that we could rely upon from your perspective in determining whether we should declassify. Yeah, it's not, as I said before, Your Honor, it's not in the order. You can use those same facts that Judge Goh set forth in her order, applying them to the ascertainability analysis. This Court can use those same facts to deny based on predominance. So, I just want to be sure, you're not saying that that's what she did. You're saying that we could take those same facts, make our own determination with respect to other aspects of the class certification and come to the same conclusion. Yes, Your Honor, absolutely. There's no need to wait for a prosceno, and that's exactly what this Court did in Berger. I think in that case, Judge Walter denied based on ascertainability, but this Court affirmed based on predominance and then noted in a footnote that it didn't need to reach the threshold of tension for ascertainability. Thank you, Your Honor. Mr. Gore, you have some reserve time. Thank you. The District Court denied class certification solely on ascertainability grounds. And although the District Court was simultaneously proceeding over other similar cases of ours, including Brazil v. Dole, that involved other class cert issues, including damages calculations, the District Court in this case chose to take the ascertainability off-ramp. From your perspective, since that's what the District Court relied upon, we've got to decide based upon the same issues that she used, right? We couldn't go to a different aspect. For a very specific reason that is different from Berger, because the law in these cases, in food labeling cases, is evolving rapidly. It evolved considerably on September 30, when a different panel of the Ninth Circuit rejected our unlawful sale theory. And so on what case was that? That was Brazil v. Dole. And so on remand, in the wake of that ruling from the Ninth Circuit, we would proceed differently with respect to damages calculations. And as we talked about earlier, you could calculate restitution, based perhaps on the price difference between Beach and Atta Gerber, but you might calculate disgorgement differently based on Gerber's net profits from these products. Even Gerber doesn't argue that it's entitled to profit from the distribution of misbranded food. So for that reason, this panel should base its ruling on everything and only that which the District Court addressed with respect to class certification, and that was ascertainability. And the panel is right that that ruling is going to be determined by whatever the Ninth Circuit does on Brazino. Now, we're just asking questions. We haven't made any decisions yet, because I understand. Gerber is asking this panel to traditionally graft a corollary under Rule 23, and that corollary would be that a company can avoid class certification simply by changing its labels. There were 15 products involved in this case, not 60-some odd. But Gerber would move around small, insignificant features on its labels from time to time to what ultimately confused Ms. Britton at her deposition. She nonetheless remembered exactly which 15 products she bought. She remembered reading the labels. She remembered how significant Gerber's label claims were to her, and she remembered the time period in which they purchased those products at a minimum. No matter how this Court views ascertainability, this case should be remanded for a B-2 trial, because even the Third Circuit doesn't require ascertainability with respect to a B-2 class. Unless the panel has questions. No further questions. Thank you, Counsel. The case just argued will be submitted for a decision, and the Court will hear arguments.
judges: O'scannlain, Gould, M. Smith